# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7403 | **DATE** | 8/26/2004 |
| **CASE TITLE** | Delores Washington vs. South Shore Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/9/04 at 11:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held on motions for summary judgment. Defendant's motion for summary judgment (41-1) is granted on the breach of promissory note claim as to liability only and on the FCRA claim. Plaintiff's motion for summary judgment on the FCRA claim (42-1) is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 27 2004 | |
| | Notified counsel by telephone. | | date docketed | 45 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 8/26/04 date mailed notice | |
| CW courtroom deputy's initials | | Date/time received in central Clerk's Office | cw mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DELORES WASHINGTON, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 7403 |
| SOUTH SHORE BANK, | ) ) | Paul E. Plunkett, Senior Judge |
| Defendant. | ) ) | |

DOCKETED
AUG 27 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Delores Washington ("Washington"), sued South Shore Bank ("ShoreBank") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). ShoreBank has filed a counterclaim, alleging breach of promissory note. ShoreBank has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 on both claims. Washington has filed a motion for summary judgment on her FCRA claim. For the reasons stated below, we grant ShoreBank's motion for summary judgment as to both claims. Washington's motion for summary judgment on the FCRA claim is denied.

### Facts

Unless otherwise noted, the following facts are either undisputed or deemed admitted because the parties failed to comply with Local Rule 56.1 ("LR 56.1"), a local rule which this Court



enforces.[1] *See Smith v. City of Chicago*, No. 94-C920, 2002 WL 1770532 (N.D. Ill. Aug. 1, 2002). Washington was employed by ShoreBank from January 1998 until sometime in December 1999. (ShoreBank LR 56.1(a) Stmt. ¶ 1.) Washington left ShoreBank voluntarily in December 1999 because she became unhappy with new management. (*Id.*) On or about April 19, 2000, Washington executed and delivered a loan application to ShoreBank. (*Id.* ¶ 2.) The loan application authorized ShoreBank to "check [Washington's] credit and employment history." (*Id.*; ShoreBank Ans. Ex. B.) On or about April 20, 2000, ShoreBank lent Washington $1,614.27 (the "Loan"). (ShoreBank LR 56.1(a) Stmt. ¶ 3.) On that same date, Washington executed and delivered to ShoreBank a promissory note dated April 20, 2000 for the same amount (the "Note"). (*Id.*) Washington used the proceeds from the Loan to pay off a prior loan on which she had been a co-borrower. (*Id.* ¶ 4.) Also in April 2000, Washington closed a checking account she had at ShoreBank. (*Id.* ¶ 5.)

ShoreBank contends that the Loan remains unpaid. It says that Washington has not made any payments on the Note, but it does acknowledge that Guarantee Life Insurance Company ("Guarantee Life"), Washington's insurance company,[2] made one payment of $152.81 on the Note in September 2000. (*Id.* ¶¶ 7, 8; Horsch Aff. ¶¶ 8, 9.) Washington says that she made two cash payments on the Note. (Washington Dep. at 18-19.) Washington does not have any receipts evidencing these cash payments. (ShoreBank LR 56.1(a) Stmt. ¶ 18.) She believes that Guarantee Life paid the balance of the Note, but has nothing in writing from the company showing that it paid off the Loan. (*Id.* ¶¶

---

[1] The parties cite to "argument" and portions of their pleadings in support of specific statements of material facts and responses thereto, and in some cases, they provide no support at all for the statement. *See e.g.*, Washington Resp. ShoreBank LR 56.1(a) Stmt. ¶¶ 10, 12; Washington LR 56.1(b)(3)(B) ¶¶ 1, 3; ShoreBank LR 56.1(a) Stmt. ¶ 9. LR 56.1 and Rule 56 contemplate that one will cite to the record; a party cannot rest on the pleadings.

[2] Washington said she filed a claim with Guarantee Life in July 2000 after she sustained an injury in the month prior. (Washington Dep. at 19-22.) As a result of the injury, she was out of work for one and one-half months. (*Id.*)

19, 20.) She does not have any written evidence from Guarantee Life that it made any payments on the Note. (*Id.* ¶ 19.)

ShoreBank began collection efforts on the Note and attempted to contact Washington by mail with computer-generated demand letters, but ShoreBank received no response. (ShoreBank LR 56.1(a) Stmt. ¶ 10.) ShoreBank contacted Trans Union, a credit reporting agency, on November 20, 2000. (*Id.* ¶ 11.) ShoreBank contacted Trans Union to obtain information that would assist it in determining whether a fraud had been perpetrated on the bank, whether ShoreBank had the correct address for Washington and whether Washington "was collectible." (*Id.*) As the Trans Union credit report showed Washington had other delinquent debts, ShoreBank elected to delay initiating any action against Washington to collect on the Note. (*Id.* ¶ 12.) ShoreBank periodically reviewed Washington's account in an effort to determine her collectibility and whether she had changed her address.[3] To that end, between November 2000 and June 2002, ShoreBank contacted Trans Union four more times: on November 30, 2000; March 14, 2001; July 26, 2001; and June 18, 2002.[4] (*Id.* ¶ 13; Washington LR 56.1(b)(3) Stmt. ¶ 2.) ShoreBank maintains that the Note is in default, and as a result, $22,878.06, including attorney's fees, is due and unpaid. (Horsch Supp. Aff. ¶¶ 10, 17, 18.) Washington denies this.

Washington did not contact ShoreBank about the credit report inquiries because she did not "think anything was wrong." (Washington Dep. at 70.) When she learned that ShoreBank's

---

[3] Washington denies ShoreBank's LR 56.1(a) statements 12 and 13, but provides no cite to the record to support her position. She says only that ShoreBank "lacked these alleged purposes or any permissible purpose for obtaining and using her credit report." (Washington Resp. ShoreBank LR 56.1(a) Stmts. ¶¶ 12, 13.)

[4] ShoreBank does not admit to these specific dates, but it does state that it obtained Washington's credit report four more times between November 2000 and June 2002, and also relies on the information contained in the Trans Union credit report in its own reply brief. (ShoreBank Reply Mot. Summ. J. at 10.) The Trans Union credit report shows ShoreBank received Washington's credit report on these dates. (Washington Mot. Summ. J. Ex. D.)

inquiries to Trans Union may have been improper or even illegal, she did not call ShoreBank, explaining that: "I have no idea who to call." (*Id.*) Washington has not sought any medical treatment for any suffering she alleges is caused by ShoreBank's accessing her credit report. (ShoreBank LR 56.1(a) Stmt. ¶ 15.) Washington has not been denied credit by anyone who specifically mentioned ShoreBank's inquiries to Trans Union as a reason for the denial. (*Id.* ¶ 16.)

Washington filed this action in October 2002, claiming that ShoreBank has accessed her credit report without a permissible purpose or her authorization in violation of the FCRA. She alleges that she suffered physical, emotional and mental pain and anguish and a reduced credit score as a result of ShoreBank's inquiries. ShoreBank filed a counterclaim in September 2003, alleging breach of promissory note.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). The movant is not required to make an affirmative showing that there are no material facts in issue. Instead, the movant need only show an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the nonmovant bears the ultimate burden of proof, he must present definite,

competent evidence to rebut the motion. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment under Rule 56. *See United Transp Union v. Illinois Ctr. R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998).

**Discussion**

*1.     ShoreBank's Motion for Summary Judgment on Breach of Promissory Note*

Washington does not dispute the terms of the Note or the Note's enforceability. The terms of the Note require Washington to make eighteen (18) monthly payments of $101.87 each, starting in May 2000. Final payment was due on October 20, 2001. The terms also provide that Washington's failure to pay any installment would constitute a default, thereby allowing ShoreBank to accelerate the Note and demand full payment, including all accrued unpaid interest. Washington is required to pay all costs of collection, including attorney's fees, incurred by ShoreBank as a result of Washington's default. The Note is to be governed by and construed in accordance with Illinois law. (ShoreBank Reply Mot. Summ. J. Ex. B.)

There is no genuine issue of material fact that some amount on the Note is due. Both parties agree that at least one payment of $152.81 was made by Guarantee Life. However, there is disagreement as to whether other payments were made. Washington says that she made two payments on the Note, in person and in cash; ShoreBank disputes this fact. ShoreBank asserts that because Washington has no evidence of the payments she made to the teller, only the $152.81 payment from Guarantee Life should be credited to the Loan balance. ShoreBank is incorrect. As Washington points out, she has evidence to support her assertion that she made payments on the

Note – her deposition testimony stating that she made two payments. Washington has personal knowledge of this matter and her deposition testimony as to this particular issue is sufficient to create a genuine issue of material fact as to whether payments in addition to the $152.81 were made on the account. One might expect that producing a receipt for a cash payment would be the best way to show that a payment had, in fact, been made, but Washington could have lost the receipts or the teller could have neglected to give them to her or to enter the payments into the bank's computer program. We draw all inferences in favor of the nonmoving party. *See Michas*, 209 F.3d at 692. The fact that she cannot produce any receipts evidencing her two cash payments does not decide the issue because on a motion for summary judgment, we do not make credibility determinations or weigh evidence. *See Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993).

That being said, however, Washington cannot rely on her deposition testimony or her answer to interrogatory number 22 to rebut ShoreBank's contention that some amount of the Loan remains unpaid and is due. In addition to her deposition testimony stating she made two payments herself, Washington says that "over the phone, [Guarantee Life] confirmed that [the Loan] was paid" and that "[Guarantee Life] told me they paid the remaining balance of the Loan." (Washington Dep. at 22-23.) Washington's proffer of the statement about Guarantee Life (and her interrogatory answer asserting same) as evidence that the Loan has been paid in full constitutes hearsay and we cannot consider it in deciding ShoreBank's motion for summary judgment.[5] *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (party may not rely upon inadmissible hearsay in deposition to oppose a motion for summary judgment); *In re Hermanson*, 273 B.R. 538 (Bankr.

---

[5] In its memorandum in support of its motion for summary judgment, ShoreBank says that Washington has subpoenaed Guarantee Life and received confirmation that it did not pay off the Loan. Washington has not commented on this assertion.

N.D. Ill. 2002) (on motion for summary judgment, cannot rely on interrogatory answers that are based on statements of another person). Therefore, she has failed to raise a genuine issue of fact to preclude summary judgment on ShoreBank's breach of promissory note claim. Accordingly, we grant ShoreBank's motion for summary judgment on this claim, but as to liability only.

We cannot enter a judgment order against Washington for any particular amount. A genuine issue of material fact exists as to the remaining principal balance of the Loan and consequently, the amount of interest owed on the Note cannot be fixed. In addition, we will not entertain at this time ShoreBank's request for $20,264.53 in attorney's fees and costs incurred in collecting on the unpaid Note.

2. *Washington's and ShoreBank's Motions for Summary Judgment on Fair Credit Reporting Act Claim*

Washington claims that, when ShoreBank obtained her credit report November 20, 2000; November 30, 2000; March 14, 2001; July 26, 2001; and June 18, 2002, it violated section 1681b(f) of the FCRA.

In general, section 1681b(f) provides that a credit report shall not be used or obtained for any purpose not authorized under the FCRA. 15 U.S.C. § 1681b(f) (West 1998). Section 1681b(a) sets forth the permissible purposes under which ShoreBank can obtain Washington's credit report. ShoreBank contends that its acquiring of the credit report was permissible under subsection (3)(A) or, in the alternative, subsection (3)(F).

Subsections (3)(A) and (3)(F) provide that a consumer reporting agency may provide a consumer (or credit) report:

> (3) To a person which it has reason to believe –
>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; . . .
>
> ***
>
>> (F) otherwise has a legitimate business need for the information –
>>> (i) in connection with a business transaction that is initiated by the consumer; or
>>> (ii) to review an account to determine whether the consumer continues the meet the terms of the account.

15 U.S.C. §§ 1681b(a)(3)(A) & (F) (West 1998). These subsections also apply to parties who obtain credit information. *See* 15 U.S.C. § 1681b(f).

We find there is no genuine issue of material fact that ShoreBank obtained Washington's credit report for a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) or, in the alternative, (3)(F). ShoreBank has said that its purpose in obtaining Washington's credit report was to determine if a fraud had been perpetrated on the bank, to determine if Washington had changed her address and to determine whether she was collectible.[6] Obtaining a credit report to locate a debtor does not violate the FCRA. *See Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1278 (D. Md. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997) (use of credit report to obtain address in order to effect personal service is permissible purpose under subsection (3)(F)); *Baker v. Bronx-WestChester Investigations, Inc.*, 850 F. Supp. 260, 262 n.5 (S.D.N.Y. 1994) (using credit report to locate debtor to aid in collection of judgment is permissible purpose under subsection (3)(A)). It is worth noting that Washington's answer to interrogatory number 5 indicates that she has had at least four different addresses since April 2000. (ShoreBank Mot. Summ. J. Ex. C.) This is consistent with ShoreBank's assertion that it attempted to contact Washington by mail in connection with the missed payments

---

[6] Presumably, this refers to whether Washington was in a financial position to pay the debt.

but received no response. (*Id.* at 7.) Thus, it had reason to inquire into Washington's current address. Contrary to Washington's assertions that ShoreBank did not need a complete credit report to confirm her address and therefore did not have a permissible purpose to obtain the report, a user of a credit report need not obtain the least intrusive report containing the information sought. *Korotki*, 931 F. Supp. at 1278.

Similarly, obtaining a credit report to determine whether a fraud had been committed at the outset of a loan transaction or whether a creditor should even pursue a delinquent debt clearly falls within the permissible purpose contemplated by subsection (3)(A). Subsection (3)(A) refers to a credit report used "in connection with a credit transaction involving the consumer" and involves "the review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). Here, there is no doubt that Washington and ShoreBank were engaged in a credit transaction and that determining Washington's ability to pay a debt, or to what lengths ShoreBank should go to collect on the debt, would "involve" the "review" or "collection" of an account. *See Zeller v. Samia*, 758 F. Supp. 775, 781 (D. Mass. 1991) (obtaining credit report to verify recording of "charge-off" relating to unpaid note was permissible purpose). In addition, determining whether a borrower obtained funds fraudulently would be "in connection with" a credit transaction and "involve" the "review" of a consumer's account.

Although it seems clear that ShoreBank had a permissible purpose under subsection (3)(A), the evidence shows that ShoreBank had a permissible purpose under subsection (3)(F). Subsection (3)(F) refers to transactions that may not be covered specifically by subsection (3)(A) but still involve the use of a credit report for a "legitimate business need" "in connection with" a "transaction" "initiated by the consumer." Washington initiated the Loan transaction and obtaining

a credit report to locate her, determine if she committed fraud or inquire into her ability to pay off the overdue Loan constitutes ShoreBank's "legitimate business need" "in connection with a business transaction." *See Mintner v. AAA Cook County Consolidations, Inc.*, No. 02-C8698, 2004 WL 1630781, at *4 (N.D. Ill. July 19, 2004) (§ 1681b(a)(3)(F) to be broadly construed). *See also Zeller*, 758 F. Supp. at 781-82 (obtaining report satisfies both subsections (3)(A) and (3)(F); business need refers to need of report's user).

Washington relies on *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808 (W.D. Ky. 2003) to support her argument that ShoreBank cannot access her credit report because the transaction has been completed. *Smith* does state that under subsection (3)(F), one does not have a right to obtain a credit report long after a transaction has commenced. *Smith*, 275 F. Supp. 2d at 818. But the circumstances here are different from those in *Smith*. The transaction involved in *Smith* "ended when the parties created a contract for the car's price and Plaintiff paid that price in full." *Id.* at 819. Washington failed to make the scheduled payments on the Loan and the debt is now past due. Unlike in *Smith*, it cannot be said that the transaction here has been completed.

Washington asserts generally that the purposes ShoreBank has proffered to justify obtaining the credit report are not legitimate. (Washington Mot. Summ. J. at 15-16; Washington Resp. ShoreBank LR 56.1(a) Stmt. ¶¶ 11, 12). She seems to say that because ShoreBank never took any affirmative steps to actually collect on the Note, none of its stated reasons for obtaining the credit report are "permissible purposes." We do not agree. Subsection (3)(A) refers to the "review" or "collection" of an account. The use of the word "review" in addition to the word "collection" suggests that obtaining a credit report for a use other than in formal collection proceedings can be permissible under the FCRA. ShoreBank obtained Washington's credit report for the first time in

November 2000, five months after Washington was to have begun making regular payments and after several payments were never made. After November 2000, ShoreBank obtained a credit report from Trans Union periodically. ShoreBank obtained the credit reports to determine her current address and whether it should initiate collection efforts at the particular time. The use of the credit report for these purposes "involves" the "review," if not the "collection," of an account. In addition, ShoreBank's stated purposes for obtaining the credit reports also fall within subsection (3)(F), which talks of a "legitimate business need" "in connection with a business transaction that is initiated by the consumer." There is no requirement that the user of the report have initiated formal collection efforts. The "legitimate business need" is need of the user of the report, in this case, ShoreBank. *Zeller*, 758 F. Supp. at 781. A lending institution clearly has a business need to locate a debtor and inquire into the debtor's ability to pay a delinquent account.

Washington has produced no evidence upon which a jury could find that ShoreBank lacked a permissible purpose in obtaining her credit report. *See Korotki*, 931 F. Supp. at 1279, *Zeller*, 758 F. Supp. at 782. She has no evidence which calls into question ShoreBank's stated reasons. There is no dispute as to any material fact regarding whether ShoreBank obtained Washington's credit report for a permissible purpose under the FCRA.

Finally, we note that Washington finds it significant that she did not give ShoreBank permission to obtain her credit report beyond the initial inquiry associated with the Loan application. It does not matter whether ShoreBank had her permission because one can obtain a credit report without the consumer's permission as long as the credit report is obtained for permissible purpose under the FCRA. *See Uhlig v. Berge Ford, Inc.*, 257 F. Supp. 2d 1228, 1232 (D. Az. 2003) (noting Federal Trade Commission has interpreted "section 1681b as allowing parties to obtain credit reports

without consumer's permission . . . as long as report is being obtained for a permissible purpose"). We found above that ShoreBank had a permissible purpose when it obtained Washington's credit report.[7] Thus, we grant ShoreBank's motion for summary judgment on the FCRA claim and deny Washington's motion for summary judgment.

**Conclusion**

For the reasons stated above, we grant ShoreBank's motion for summary judgment on the breach of promissory note claim as to liability only and on the FCRA claim. Washington's motion for summary judgment on the FCRA claim is denied.

**ENTER:**

UNITED STATES DISTRICT JUDGE
**PAUL E. PLUNKETT**

**DATED:** AUG 2 6 2004

---

[7] Washington takes issue with the number of times ShoreBank obtained her credit report and says that under ShoreBank's arguments, it could obtain her credit report countless times as long as the Loan was unpaid. She provides no case law, however, that speaks to this issue and our research did not uncover any that discussed whether there was a limit as to how frequently one can obtain a credit report in connection with a delinquent debt. ShoreBank does not address this point. The FCRA requires that when a credit report is obtained, it be done for a permissible purpose. The evidence demonstrates that, given the circumstances surrounding the past due Loan, ShoreBank had a permissible purpose each time it obtained Washington's credit report.

-12-